No. 98,842

In the Matter of DORSEY EVANS, *Respondent*.
(169 P.3d 1083)

Opinion filed October 26, 2007.

*Janith A. Davis*, deputy disciplinary administrator, argued the cause, and *Stanton A. Hazlett*, disciplinary administrator, was with her on the formal complaint for petitioner.

No appearance by the respondent.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator against respondent, Dorsey Evans, an attorney admitted to the practice of law in Kansas on February 11, 1959, albeit respondent has been administratively suspended in this state since November 20, 1987. Respondent is also admitted to practice law in the District of Columbia and the state of Maryland. The respondent's last registration address filed with the Clerk of the Appellate Courts of Kansas is Washington, D.C.

The complaint against respondent in this state arises out of a final adjudication of a disciplinary action and accompanying sanction in the District of Columbia, for which respondent was also reciprocally sanctioned in the state of Maryland. The formal complaint here charged respondent with violating Kansas Rules of Professional Conduct (KRPC) 1.1 (2006 Kan. Ct. R. Annot. 358) (competence), KRPC 1.7(b) (2006 Kan. Ct. R. Annot. 411) (conflict of interest), and KRPC 8.4(d) (2006 Kan. Ct. R. Annot. 510) (misconduct).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys on May 3, 2007. The respondent appeared pro se, by telephone. During his direct examination, the respondent testified that he had fulfilled the requirements for reinstatement in the District of Columbia. He was reinstated to the practice of law with the condition of probation and oversight of his practice

on September 6, 2006. The respondent had also been reinstated to the practice of law in Maryland on March 13, 2007.

## HEARING PANEL FINDINGS

The hearing panel found the following facts by clear and convincing evidence:

"2. The Respondent was admitted to the practice of law in the District of Columbia on June 1, 1960. Thereafter, on December 10, 1985, the Respondent was admitted to the practice of law in the state of Maryland.

"3. On April 27, 2006, the District of Columbia Court of Appeals issued an order of discipline regarding the Respondent. See *In re Evans*, 902 A.2d 56 (D.C. 2006). In its opinion, the Court incorporated the Board on Professional Responsibility's report. The findings of fact contained in the Board's report included the following:

### A. *Respondent's Practice*

"1. Respondent is a member of the Bar of the District of Columbia Court of Appeals, having been admitted on June 1, 1960. Respondent is also admitted to practice law in Maryland and Kansas.

"2. Respondent's practice has included probate matters in the D.C. Superior Court since that court was formed in 1972.

"3. Respondent also has an active real estate settlement practice. In 1997, Respondent owned Delco Title, which he operated out of his law office in Silver Spring, Maryland. Bankers Financial Group, a mortgage lending company, used Respondent and Delco Title repeatedly for mortgage settlements over a three-to four-year period through 1997, sending Delco Title approximately 20 loans per month for handling.

### B. *The Heirs of Zaidee Robinson*

"4. Mrs. Zaidee H. Robinson died in 1987. At the time of her death, Zaidee Robinson owned real property located at 716 Ingraham Street in northwest Washington, D.C. (hereinafter the 'Ingraham Street property'). As of April 1997, Zaidee Robinson's estate had never been probated.

"5. Zaidee Robinson was survived by two sons, Maurice and Clifton.

"6. Maurice Robinson died in 1989. He was survived by his wife, Carolyn Robinson and two sons Qawi and Yusef. At the time of his death, Maurice and his family resided at the Ingraham Street property.

"7. Following his mother's death, Clifton Robinson was incarcerated.

### C. *Respondent's Representation of Carolyn Robinson*

"8. On April 17, 1997, Bankers Financial contacted Delco Title about handling a closing on a real estate loan for Carolyn Robinson. The loan was for $65,000 on the Ingraham Street property, where Carolyn Robinson lived at the time.

"9. At some point after the initial referral, Respondent learned that the Ingraham Street property was deeded to Zaidee rather than Carolyn Robinson. Carolyn Robinson subsequently retained Respondent to assist her in becoming personal representative of Zaidee Robinson's estate and in closing the loan on the Ingraham Street property. As described by Respondent, his 'office was asked to handle a title closing for Carolyn Robinson and a probate estate was opened to have the appropriate people appointed to sign for the loan.'

"10. The Committee concluded that the record is unclear regarding whether Respondent or a representative of Delco Title or anyone else in Respondent's office disclosed his interest in Delco Title to Carolyn Robinson. We disagree with this finding in view of Respondent's testimony that there was no situation in which it would have been appropriate for him to disclose his interest in Delco to Carolyn Robinson and that he had no knowledge whether she had such information prior to representing her in connection with the estate. Accordingly, the Board finds that Bar Counsel proved by clear and convincing evidence that Respondent did not himself disclose his conflict to Carolyn Robinson and did not know whether she had knowingly waived the potential conflict prior to representing her in his capacity as an attorney.

"11. On April 24, 1997, Respondent filed a Petition for Probate in the Probate Division of the Superior Court of the District of Columbia, on behalf of Qawi S. Robinson, Carolyn Robinson, and Clifton Robinson, as petitioners. Qawi and Carolyn Robinson are listed as personal representatives. The petition bears signatures of all three petitioners and Respondent signed as counsel.

"12. The petition listed Maurice Robinson, Carolyn's husband, as 'deceased.' At the time of the filing, no probate estate had been opened for Maurice Robinson.

"13. The petition listed Clifton Robinson as 'incarcerated.' Respondent was informed by Carolyn Robinson that Clifton would waive his interest in the estate. Respondent made no effort to confirm this purported waiver with Clifton Robinson.

"14. Forms entitled 'Renunciation, Nomination of Personal Representative and Waiver of Bond' signed by Clifton and Yusef Robinson were filed with the Petition (the 'renunciation forms').

"15. On April 29, 1997, a Probate Judge signed an Abbreviated Probate Order appointing Carolyn and Qawi Robinson as co-personal representatives of the estate of Zaidee Robinson.

"16. On May 8, 1997, Qawi and Carolyn Robinson, as co-personal representatives of the estate, deeded the Ingraham Street property to Carolyn Robinson.

"17. The same day, Carolyn Robinson executed a Deed of Trust mortgaging the Ingraham Street property for $65,000.

"18. The interest rate on the mortgage was 12.930%. A broker's fee of $6,500 was paid to Bankers Financial from the settlement funds.

"19. Delco Title was paid a settlement fee of $350.

"20. Delco Title received a check for $824.20 out of the settlement funds. In addition to the settlement fee listed above, this payment included items 1102 and

1103 on HUD Form 1-A: $325 for 'Abstract or title search to Lots and Squares Abstractors' and $160 'Title examination to Spectrum Title Services.' In fact, Delco paid only $75 to Spectrum Title Services and $155 to Lots and Squares Abstractors. Accordingly, the fees retained by Delco totaled $590.

"21. Respondent's law office, Evans & Evans received $1,700.00 in fees from the settlement funds. This included document preparation fees (items and 1104 and 1105 on HUD Form A-1) and $1,300.00 in fees for probate work (item 1107).

"22. In total, Respondent retained $2290 from this transaction.

"23. Respondent did not receive approval from the Probate Court before accepting these payments.

### D. *Mishandling of the Estate and Closing*

"24. Maurice Robinson was an heir to Zaidee Robinson's estate. Bar Counsel's experts testified that, because Maurice Robinson was deceased, it was necessary to open and probate his estate before transferring assets from his mother's estate.

"25. Respondent did not open an estate for Maurice Robinson prior to transfer of the Ingraham Street property.

"26. It is apparent from the record that the Respondent intended the renunciation forms Clifton and Yusef Robinson filed with the probate petition to operate as waivers of their interest in the Ingraham Street property. The Committee found it was plain on the face of the document that the signatory only waived the right to act as personal representative of the estate and not the right to estate property. The Board accepts this finding.

"27. The Committee noted that Respondent gave inconsistent explanations regarding how he came to make this ineffective filing. Respondent initially claimed that he was acting on advice he received personally from a probate official, Donald Horton. According to Respondent, 'the probate official handed this to me and said, instead of having this one signed, sign this one, and have Mr. Clifton Robinson sign this one to renounce his interest in the property.'

"28. However, the Committee noted that Respondent had made previous statements under oath that his office clerk, not Respondent, received the advice from the probate division regarding what form to use.

"29. When confronted at the Hearing with the prior inconsistent testimony, Respondent conceded 'I did send Tommy and he went there for me' referring to his assistant Thompkin Hallman. Respondent did not call Mr. Hallman as a witness to this alleged conversation with the probate officer. The probate officer involved, Mr. Horton, now retired from the probate office, was called by Bar Counsel. He had no recollection of a conversation with Tommy Hallman where he suggested they use a 'renunciation of personal representation form' to renounce rights to the estate assets.

"30. The Committee did not find Respondent's conflicting testimony to be credible. Accordingly, it found that he had not received any advice or suggestion from the probate division that he should use the ineffective form as a release of the signatory's right to estate property. The Board accepts this finding.

"31. Bar Counsel's expert testified that, in any event, an heir can only renounce a share in an estate within nine months of the date of death. After this time expires, the heir must formally assign the rights to effectively transfer title of estate property.

### E. *Subsequent Legal Proceedings*

"32. On July 11, 1997, Clifton Robinson filed an affidavit with the Probate Court alleging that his signature had been forged on the Petition for Probate, the Consent and Waiver of Bond, and the Renunciation.

"33. In response to this affidavit, the Probate Court entered an order directing Qawi Robinson and Carolyn Robinson to appear on September 10, 1997 and 'show cause why they should not be removed as co-personal representatives' of the estate.

"34. At that hearing, the Respondent learned that his client, Carolyn Robinson, had forged Clifton Robinson's signatures. The Committee declined to find that Respondent knew about the forgeries before the hearing and it credited Respondent's testimony that he had no reason to question the signatures obtained by his client. The Board accepts this finding.

"35. Bar Counsel's probate expert opined that she would write to the other heirs to make sure 'they had no interest,' and 'make certain that they signed an assignment or something.' The Committee concluded, however, that this testimony did not support a finding that a competent probate attorney would have insisted on this course of conduct, *i.e.*, would have spoken to or corresponded with the other heirs personally, rather than accept the statements of Ms. Robinson and the signatures she had supposedly obtained.

"36. The show cause hearing was continued until November 13, 1997. Respondent did not attend the November 13 hearing. Respondent later claimed his absence from court was 'due to a posting error by new personnel in . . . [my] office.'

"37. In a written Order issued on November 14, 1997, the Court removed Carolyn and Qawi Robinson as Co-Personal Representatives. The Court noted, 'with this loan clouding the status of the [Ingraham Street property] Carolyn Robinson has an obvious conflict of interest of her own that precludes her ability to discharge her fiduciary duty.'

"38. The Court appointed Benny L. Kass, Esq. to act as personal representative of Zaidee Robinson's estate.

"39. The November 14 Order also directed the removed co-personal representatives to file an affidavit detailing the assets and debts of the estate on or before January 5, 1998. Respondent was served with a copy of this Order.

"40. The removed co-personal representatives did not file the required affidavit. On the filing deadline, Carolyn Robinson filed a petition for an extension of time, claiming that she needed more time to comply because she was no longer represented by Respondent and that she had expected him to file the affidavit on

her behalf. The Court denied this request in a written Order, dated January 28, 1998.

"41. In the January 28 Order, the Court expressed concern over (1) Respondent's ownership of the title company used for the loan on the estate property, and (2) Respondent's continued representation of the estate and Ms. Robinson, 'knowing that she was using as collateral realty that did not belong to her' and suggested that Bar Counsel should investigate this apparent conflict.

"42. The Court also noted that Respondent had made no effort to explain his absence at the November 13 hearing.

"43. The January 28 Order was served on both Respondent and Bar Counsel.

"44. On February 2, 1998, Respondent moved to withdraw as counsel for the estate, which the Court allowed on March 11, 1998.

"45. On May 8, 1998, Mr. Kass filed a civil action against Carolyn Robinson, Qawi Robinson, Respondent and his law firm, and Delco Title over the erroneous probate and property settlement. Respondent settled the claims against him for $37,500.

"4. Based upon the facts set forth in ¶ 3 above, the District of Columbia Court of Appeals concluded that the Respondent violated District of Columbia Rules of Professional Conduct 1.1(a) (competent representation), 1.1(b) (skill and care), 1.7(b)(4) (conflict of interest), and 8.4(d) (conduct that seriously interferes with the administration of justice) during his representation of a client. As a result, the District of Columbia Court of Appeals suspended the Respondent 'from the practice of law in the District of Columbia for a period of six months with reinstatement conditioned upon his completion of six hours of continuing legal education courses in the area of probate law and legal ethics.' *Evans*, 902 A.2d at 59. Additionally, the District of Columbia Court of Appeals ordered that the final 90 days of the period be stayed on the condition that the Respondent be placed on probation and subject to a practice monitor for a period of one year.

"5. On August 10, 2006, the Court of Appeals of Maryland issued its opinion on the same matter and imposed reciprocal discipline. The Court of Appeals of Maryland suspended the Respondent for a period of 90 days. *See In re Evans*, 905 A.2d 384 (Md. 2006).

"6. For a period of twenty years, the Respondent has failed to pay the annual Kansas attorney registration fee, failed to complete the requisite number of continuing legal education hours for Kansas, and has failed to pay the Kansas annual continuing legal education fee."

## HEARING PANEL CONCLUSIONS

The hearing panel then made the following conclusions of law:

"1. The District of Columbia Court of Appeals concluded that the Respondent violated Rule 1.1(a), Rule 1.1(b), Rule 1.7(b)(4), and Rule 8.4(d). The Rules in the District of Columbia are substantially similar to the Kansas Rules of Profes-

sional Conduct. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1, KRPC 1.7(b), and KRPC 8.4(d), as detailed below.

"2. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent failed to competently represent his client when he filed ineffective renunciation statements for Yusef and Clifton Robinson, when he permitted Carolyn Robinson to distribute estate assets without court approval, and when he took his fees out of the estate without court approval. *See Evans*, 902 A.2d at 70, 72. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3. KRPC 1.7 provides the general rule regarding conflicts of interest. That rule provides, in pertinent part, as follows:

'(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.'

In this case, the Respondent did not obtain the client's consent after consultation. See *Evans*, 902 A.2d at 66. Therefore, the Hearing Panel concludes that the Respondent violated KRPC 1.7(b).

"4. 'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In this case, the Respondent engaged in 'conduct that is prejudicial to the administration of justice' when he failed to attend the November 13 hearing regarding the forged documents, when he failed to withdraw from the representation or ensure that his client complied with the Court's November 14 order directing her to file an accounting, and when he accepted payment of legal fees from estate assets without prior court approval. *See Evans*, 902 A.2d at 67. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(c)."

## HEARING PANEL RECOMMENDATIONS

In recommending suspension for an indefinite period of time as the appropriate discipline in this case, the hearing panel considered the following factors outlined by the American Bar Association Standards for Imposing Lawyer Sanctions:

"*Duty Violated*. The Respondent violated his duty to his client to provide competent representation, his duty to his client to refrain from conflicts of interest, and his duty to the legal profession to refrain from prejudicing the administration of justice.

*"Mental State.* The Respondent knowingly violated his duties.

*"Injury.* As a result of the Respondent's misconduct, the Respondent caused actual harm.

*"Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Prior Disciplinary Offenses. The Respondent has been previously disciplined on two occasions. In 1982, the Respondent was informally admonished for failing to supervise the work of an associate attorney. In 1990, the District of Columbia Court of Appeals suspended the Respondent's license to practice law for six months for negligent misappropriation. In that case, the Respondent took a fee from an estate without proper authorization. *In re Evans,* 578 A.2d 1141 (D.C. 1990). Finally, in cases based upon the facts in the instant case, the District of Columbia Court of Appeals and the Maryland Court of Appeals suspended the Respondent's license to practice law for a net period of 90 days each.

"Dishonest or Selfish Motive. The Respondent's misconduct was motivated by selfishness, in that, by virtue of the conflict of interest, the Respondent and his title company received funds from the estate.

"Refusal to Acknowledge the Wrongful Nature of his Conduct. The Respondent refused to acknowledge that he engaged in wrongdoing—other than to admit that he failed to read the form he used for the renunciation of the interest in the estate. The Respondent failed to acknowledge that he failed to provide competent representation to his client, the Respondent failed to acknowledge that he had a conflict of interest, and the Respondent failed to acknowledge that his misconduct prejudiced the administration of justice. Accordingly, the Hearing Panel concludes that the Respondent's failure or refusal to acknowledge the wrongful nature of his conduct is a factor in aggravation in this case.

"Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to the practice of law in 1959. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of more than 40 years. Accordingly, the Hearing Panel concludes that the Respondent had substantial experience in the practice of law at the time he engaged in the misconduct.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Imposition of Other Penalties or Sanctions. For this conduct, the Respondent has been suspended from the practice of law in the District of Columbia and the state of Maryland.

"Remoteness of Prior Offenses. The discipline imposed in 1982, is remote in time and in character to the misconduct in this case. The discipline imposed in 1990, is remote in time but not in character to the misconduct in this case.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:
'Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.' Standard 4.32

'Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.' Standard 4.52

'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system.' Standard 7.2."

## The panel recommended the following discipline:

"The Deputy Disciplinary Administrator recommended that the Respondent be indefinitely suspended.

"The Respondent stated that he has already been suspended from the practice of law for this conduct—in the District of Columbia and Maryland—and that no discipline should be imposed.

"The Hearing Panel considered the Respondent's argument that because he has already been suspended from the practice of law in the District of Columbia and the state of Maryland that he should not be again suspended for the same misconduct. First, a license to practice law is a privilege not a right. In order to preserve the privilege, a lawyer must refrain from engaging in misconduct. Second, because our profession is self-regulated, the public monitors actions taken closely. Thus, when a lawyer engages in misconduct, appropriate discipline must be imposed (1) to assure that the public is protected and (2) to establish that the public's confidence in our system of self-regulation is deserved. Finally, the Respondent has applied for and received three licenses to practice law—in the state of Kansas, the District of Columbia, and the state of Maryland. The jurisdictions are separate and distinct entities and the status of the license in one jurisdiction is not interdependent on the status of the others. Each jurisdiction has the authority to regulate its licensees subject to its rules.

"Generally, in reciprocal discipline cases, the Hearing Panel is inclined to recommend that the same discipline be imposed in Kansas as was imposed in the state where the Respondent practices. However, in this case, the Respondent's relationship with Kansas is different than the Respondent's relationship with the District of Columbia and the state of Maryland. The Respondent actively practices law in the District of Columbia and the state of Maryland. In contrast, the Respondent has never practiced law in Kansas, he has no present plans to move to Kansas and practice law, and he has made no attempt to comply with the requirements of the Kansas Supreme Court rules. The Respondent failed to pay registration fees, failed to pay continuing legal education fees, and failed to complete the required continuing legal education hours. The Respondent's inaction has resulted in a 20-year suspension from the practice of law in the state of Kansas.

"Because the Respondent has failed to comply with the rules of the Kansas Supreme Court for a period of 20 years, a more severe discipline is appropriate. Accordingly, the Hearing Panel recommends that the Kansas Supreme Court suspend the Respondent's license to practice law for an indefinite period of time.

"In the event the Respondent applies for reinstatement, the Hearing Panel recommends that at the reinstatement hearing, the Respondent establish that he knows, understands, and is willing to comply with the Kansas Supreme Court rules. Further, based upon the Respondent's testimony, the Hearing Panel is somewhat concerned regarding the Respondent's competence. As such, if the Respondent applies for reinstatement, the Hearing Panel recommends that the Disciplinary Administrator investigate fully whether the Respondent is competent to engage in the active and continuous practice of law.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

That respondent violated the Rules of Professional Conduct in this state requires no discussion. Respondent did not file exceptions to the final hearing report of the panel, and, therefore, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(d) (2006 Kan. Ct. R. Annot. 295). Likewise, pursuant to Supreme Court Rule 202 (2006 Kan. Ct. R. Annot. 239-40), "[a] final adjudication in another jurisdiction that a lawyer has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this state."

On the other hand, we have no constraints in determining the appropriate disposition. "The recommendation of the panel or the Disciplinary Administrator as to sanctions to be imposed shall be advisory only and shall not prevent the Court from imposing sanctions greater or lesser than those recommended by the panel or the Disciplinary Administrator." Supreme Court Rule 212(f) (2006 Kan. Ct. R. Annot. 297).

At first blush, the recommended sanction of indefinite suspension would appear disproportionate to that imposed in the District of Columbia and the state of Maryland. However, as the panel noted, unlike his relationship with the other jurisdictions, respondent has been continuously suspended from the practice of law in this state for 2 decades because of his complete disregard for the administrative and financial obligations placed upon those attor-

neys who would be active practitioners in this state. Therefore, we concur with and adopt the panel's recommendations.

IT IS THEREFORE ORDERED that Dorsey Evans be and he is hereby indefinitely suspended from the practice of law in the state of Kansas, effective on the date of this opinion.

IT IS THEREFORE ORDERED that Dorsey Evans shall comply with Supreme Court Rule 218 (2006 Kan. Ct. R. Annot. 314) and, if respondent seeks reinstatement, that he shall comply with Supreme Court Rule 219 (2006 Kan. Ct. R. Annot. 327); that he shall demonstrate that he knows, understands, and is willing to comply with the Kansas Supreme Court rules; and that he is competent to engage in the active and continuous practice of law in this state.

IT IS THEREFORE ORDERED that this opinion be published in the official Kansas Reports and that respondent pay the costs of these proceedings.

DAVIS, J., not participating.

MCANANY, J., assigned.